## PUENTE *v.* PÉREZ ET AL.

### APPEAL from the District Court of Arecibo.

No. 4.—Decided June 16, 1904.

COMMUNITY PROPERTY—PARAPHERNAL PROPERTY—MARRIAGE CONTRACTS ENTERED INTO PRIOR TO THE PROMULGATION OF THE CIVIL CODE.—In regard to marriage contracts entered into prior to the promulgation of the Civil Code in 1899, the assets and liabilities of the conjugal partnership and the condition of paraphernal property were governed by the provisions of the old law, that is to say, the ''Leyes de Partidas'' and the ''Novísma Recopilación.''

ID.—LIABILITIES OF THE CONJUGAL PARTNERSHIP.—According to the former laws in force, paraphernal property, which is the property brought to the marriage, or acquired after the marriage, by either party to the same, is not subject to the liabilities of the conjugal partnership, except as to the products thereof, or the income upon the same.

CONVEYANCE OF PARAPHERNAL PROPERTY IN FAVOR OF THE CREDITORS OF THE CONJUGAL PARTNERSHIP.—Paraphernal property not being liable for the debts of the conjugal partnership, the conveyance of an estate possessing the character of paraphernal property cannot be declared null and void on the ground that the same was executed in fraud of the creditors of the conjugal partnership.

CONTRACT—ACCOUNT CURRENT—CODE OF COMMERCE—ACCURACY OF ACCOUNTS CURRENT.—Accounts current with mercantile firms are regulated by the provisions of the Code of Commerce, and it is incumbent upon the party producing the account current to prove the accuracy thereof, and to show that the same is due.

ID.—PRESCRIPTION.—The different items of an account current when the same is kept in a regular manner and is continuous, are not subject to the law of prescription.

ID.—LOANS MADE FOR AN INDEFINITE PERIOD OF TIME.—The provisions of article 313 of the Code of Commerce are not applicable to debts which fall due upon a fixed date, but the same are applicable exclusively to loans for an indefinite period of time.

ASSIGNOR—ASSIGNEE.—The assignee is subrogated, for all purposes, to the rights and actions of the assignor relating to the matter which is the object of the assignment.

PARAPHERNAL PROPERTY—LIABILITIES OF THE CONJUGAL PARTNERSHIP.—The obligation contracted by the husband to pay certain debts of the conjugal partnership with the income from the paraphernal property of his wife, cannot affect her ownership of the said property.

COMMUNITY PROPERTY.—The increase in value, during the existence of the marriage, of an estate which is the paraphernal property of the wife, cannot be considered as belonging to the conjugal partnership, unless it is clearly proved that such increase in value was the result of improvements made upon the estate with the money of the conjugal partnership.

### STATEMENT OF THE CASE.

This is an action instituted in the District Court of Arecibo by Antonio Puente y Leal and continued by his assignee Juana Puente y Leal, plaintiff, against José Miranda Pérez, his wife Dionisia Freytes and José Arturo Freytes, for the recovery of a debt and rescission and annulment of the sale of a rural estate; which case is pending before us on appeal in cassation for error of law, now ordinary appeal, taken by Juana Puente y Leal, from the judgment rendered by aforesaid court, the appellant having been represented in this Supreme Court by Attorney Jacinto Texidor, while the respondents failed to appear.

The above-mentioned judgment reads as follows:

"Judgment No. 43.—In Arecibo, December 22, 1902. An oral and public hearing was held in this district court, of the declaratory action instituted by Juana Puente y Leal, unmarried, of legal age, engaged in household occupations appropriate to her sex, and a resident of Manatí, as assignee of Antonio Puente y Leal, property-owner and a resident of the same city, represented by Attorney Jacinto Texidor y Alcalá del Olmo, against José Miranda, his wife Dionisia Freytes and José Arturo Freytes, residents of Manatí, defended by Attorney Elpidio de los Santos y Laguardia, for the rescission of the sale of a rural estate.

"On September 20, 1900, Attorney Herminio Díaz Navarro, on behalf of Antonio Puente y Leal, a resident of Manatí, instituted a declaratory action of greater import against the spouses José Miranda and Dionisia Freytes and against José Arturo Freytes, also residents of Manatí, alleging as grounds thereof that according to a public instrument executed in the aforesaid town of Manatí before Notary Francisco I. Nater y Rivera, May 1, 1896, Antonio Puente y Leal, Francisco Martinez García and José Antonio Martinez y Garcia, constituted in that town a business copartnership under the style of A. Puente & Co., the three contracting parties to act as managers, and which contract was to expire on May 1, 1900. Said copartnership having been dissolved, by reason of this dissolution and of the agreements entered into by the contracting parties, the partners Francisco and José Antonio García y Martinez withdrew therefrom, all their interest therein being transferred to Puente y Leal who became the sole owner of all the properties, credits, rights and actions of the firm, he at the same time being charged with the liquidation of the liabilities thereof, according to a public instrument executed August 11, 1900, before Notary Maurico Guerra, of San Juan; that José Miranda, a resident of Manatí, had an account current with said firm of A. Puente & Co., and by reason thereof, as shown by the accompanying letter, marked exhibit No. 1, he was supplied by said firm with various sums of money and quantities of provisions at different dates, aggregating 5,358.01 *pesos,* for the maintenance and cultivation of a rural estate situated in *barrio* 'Rio-Arriba-Poniente,' within the municipality of Manatí, the same consisting of 125 *cuerdas,* equal to 49 hectares and 13 ares of land, planted with coffee, plantains and minor fruits, and bounded on the north by lands belonging to María Rivera García and Pascual Rivera; on the south by those of Salvador Freytes, Elena Freytes and Ar-

turo José Freytes, on the east by lands of Crispín Perales, and on the west, by those of Ramón Agosto Román; which estate came into her possession by inheritance from her father, Pedro Jose Freytes, according to possessory proceedings approved June 1, 1889, by the municipal judge of Manatí, and recorded in the Registry of Property of Arecibo; that aforesaid debt was not paid on June 30, 1899, when it fell due, and it having been agreed that in case of delay a monthly interest of one per cent. would be charged thereon, a liquidation of said interest was made on July 30, 1900, showing that the spouses Miranda and Freytes owed the principal and 717.33 *pesos* of interest accrued, less 24.39 *pesos* which were omitted, according to accompanying account, marked exhibit No. 2; and that the spouses Miranda and Freytes, with the deliberate purpose of retaining in their possession no property wherewith to satisfy aforesaid indebtedness, and thereby defrauding Puente y Leal of his rights, had simulated an alienation of the above-described estate,—their only assets,—representing the same as having been sold by Dionisia Freytes to her brother José Arturo Freytes y Pagán, in a deed executed at Vega-Baja before Notary José Felix Lajara, on January 20, 1899, for the sum of 5000 *pesos*, the delivery of which consideration was not certified by said notary as having been made in his presence, nor had the aforesaid spouses deposited anywhere the amount of his client's credit.

"As legal grounds in connection with the facts set forth in his complaint, he alleged the provisions of the Civil Code referring to the fulfillment of irregular obligations and to contracts executed in fraud of creditors; those of the Mortgage Law upon the same subject and Judicial Order of March 20 (?), 1899, upon simulation of contracts and fraudulent conveyance of property. He closed praying that the sale made by Dionisia Freytes in deed of January 20, 1899, be rescinded, or, should this not be deemed proper, that said deed be declared null and void, the record thereof in the registry of property be cancelled, and that said estate be adjudged liable, up to its full value, for the sum of 5358.01 *pesos*, principal, and interest at 1% per month from June 30, 1899, and costs.

"Cautionary notice of said complaint was entered in the Registry of Property of Arecibo and to the record was joined a letter dated July 2, 1898, signed by the defendant José Miranda, and addressed to Messrs. A. Puente & Co. of Manatí, wherein said Miranda acknowledged that he owed the above-mentioned firm a certain sum not

specified, and stated that the coffee and all the crops of his farm would go to said firm in payment of his debt.

"Notice of the complaint having been served upon the defendants, answer thereto was made by them on the 21st of the following November, through their counsel, Attorney Elpidio de los Santos Laguardia, who set forth as facts: That José Miranda Pérez had had business relations with the firm of A. Puente & Co., resulting from transactions carried on by him and purchases made for the supply of his store; that José Miranda Pérez owned only the farm he had purchased from Agosto Román, which property is incumbered and at present belongs to said Miranda Pérez; that the accounts between José Miranda Pérez and the firm of A. Puente & Co., which were discontinued in November, 1898, are pending settlement; that Dionisia Freytes de Miranda had brought to the marriage as property acquired from her father, Pedro José Freytes, the rural estate she had sold to her brother Arturo Freytes y Pagán, on January 20, 1899, which the plaintiff firm represents as belonging to the conjugal partnership; that Dionisia Freytes y Pagán and José Arturo Freytes y Pagán have not had, nor have now, any business relations whatever with the firm of A. Puente & Co.; that José Miranda Pérez made it a practice to meet all his engagements with the proceeds of his mercantile establishment; that of the accounts sought to be recovered by A. Puente & Co. from José Miranda Pérez, those contracted three years prior to the date of this writing have prescribed, because they were not claimed in due time and manner; that Dionisia Freytes de Miranda and José Arturo Freytes Pagán had executed the contract of purchase and sale of the estate in question in a perfectly legal manner, without taking into account the business of the former's husband, inasmuch as said Dionisia was the sole owner of the estate conveyed, she having acquired the same by inheritance from her deceased father; and that the aforesaid sale had been effected long before the publication of the Judicial Order prohibiting certain transfers of property, cited by the adverse party.

"As legal grounds, counsel for the defendants alleged the provisions of the Law of Civil Procedure upon the lack of capacity on the part of the defendants, articles of the Code of Commerce referring to commercial contracts, actions and prescriptions, the Civil Code as to property right and property belonging to the conjugal partnership, and the Mortgage Law with reference to the record of rights affecting all real property.

"Finally, the party defendant prayed that the dilatory exception of lack of capacity on the part of the defendants Dionisia Freytes and José Arturo Freytes, be admitted, as also the peremptory plea of prescription of the right of the plaintiff and that at the same time it be adjudged that the estate sold by Dionisia Freytes, inasmuch as it had been acquired by inheritance from her father, did not form part of the conjugal partnership with her husband, the other defendant, José Miranda, and as by the complaint it was sought to recover a sum which had not been liquidated, that the same be dismissed, with costs against the plaintiff.

"At the proceedings for the submission of evidence both plaintiff and defendants proposed that of documents, comparison of handwriting, expert testimony, declaration of witnesses and confession in court. The plaintiff's documentary evidence consists of a certificate of the records of Dionisia Freytes' estate; a copy of the deed of sale of said estate, executed in Vega-Baja before the notary public, on January 20, 1899, by Dionisia Freytes, in favor of José Arturo Freytes; a certified copy of accounts passed between A. Puente & Co., of Manatí, and José Miranda; a certificate of realty recorded as belonging to the defendant José Miranda; and a certificate of taxes paid by the plaintiffs. The documentary evidence proposed by, and taken at the request of the party defendant, consisted of private documents and certificates of taxes, also paid by the defendants.

"Before the oral hearing of this case had been held, the plaintiff, Antonio Puente y Leal, assigned to his sister Juana Puente y Leal, by public deed, all his rights and actions in this suit, and the court, after complying with the legal formalities, recognized the latter as subrogated to the rights and actions of the former. Thereupon the oral hearing was had in the presence of counsel for the parties, before whom the evidence deemed pertinent was taken; and counsel for defendants having urged the dilatory exception of lack of capacity, which was contested by counsel for the plaintiff, an order issued overruling said exception as to the defendants, and the hearing was proceeded with.

"The expert witness, Clodomiro Acevedo, declared as belonging to José Miranda, the signature attached to two letters addressed by the latter to the firm of A. Puente & Co., of which plaintiff was a member, dated respectively July 3, 1898, and February 4, 1899, wherein the writer expressed his gratefulness to those gentlemen for their forbearance toward him and requested them to wait a little longer, or

until the situation improved, for the amount due them, stating at the same time that he took exception to the rate of one and one-half per cent. monthly interest charged, as business was then extremely dull, and that the debtor's difficulties were caused by the purchase he had made of a rural estate from one Agosto, he promising that the whole crop of coffee would go to the creditor firm, to be entered on account of his debts. The said Miranda answered to questions propounded, as did also Antonio Puente y Leal and the witnesses José Rivera Rodríguez, Manuel Villamil and Salvador Freytes, after which the attorneys argued their cases, and the voting of this judgment was proceeded with.

"In the conduct of this trial all the legal formalities have been observed.

"Presiding Judge Felipe Cuchi y Arnau prepared the opinion of the court.

"The issue raised by the parties to this controversy consists in determining, first, whether or not the rural estate conveyed by Dionisia Freytes de Miranda to Arturo Freytes, should be held liable for the claim made by Juana Puente y Leal, as assignee of her brother Antonio; second, whether or not this case should be decided in conformity with commercial laws; third, whether the action to recover the sum demanded has prescribed or not; and fourth, whether the account-current giving rise to the controversy between the parties thereto, has been liquidated or not.

"As to the first point: Inasmuch as the marriage between José Miranda and Dionisia Freytes took place prior to the promulgation of the Civil Code of 1899, in Porto Rico, the assets and liabilities of the conjugal partnership and condition of the paraphernal property in this case are governed by the old laws, namely, Law 17, Title XI, of *Partida* IV, and Law 5, Title IV, Book X of the *Novísima Recopilación,* according to which, paraphernal property is that which is brought to the marriage or acquired subsequently thereto, by either of the spouses, said property being excluded from liability for the expenses of the conjugal partnership, except as to the products or rents thereof.

"The estate conveyed by Dionisia Freytes, according to public instrument of January 20, 1899, was acquired by inheritance from her father, as appears from the possessory proceedings resulting in a decree of the municipal court of Manatí, July 1, 1899, which was recorded in the Registry of Property of Arecibo under date of October 26 of the same year; wherefore said estate has the character of paraphernal property and is not liable, except as to its products or rents, for

debts contracted by the husband of Dionisia, even if the same are shown to have been created for the maintenance of the conjugal partnership.

"The fact that the husband, José Miranda Pérez, had, in a private letter, promised the firm of A. Puente & Co., predecessor in interest of the present plaintiff, all the crop of his wife's estate, toward the payment of the debts contracted by himself with aforesaid firm, does not mean that said estate had become liable to A. Puente & Co. for anything but the proceeds of the crop offered; for it is a principle of law laid down by the Supreme Court of Spain in its judgments of June 9, 1883 and April 30, 1888, among other things, that only the products of paraphernal property are liable for debts contracted by the husband when these are incurred, as in the present case, for the benefit of both spouses.

"Neither from the documentary evidence, nor the testimony of witnesses, nor any other evidence presented in this controversy, does it appear that the increase in the value of the estate conveyed by Dionisia Freytes was due to the loans or advances of money made by A. Puente & Co. to José Miranda Pérez, for it is shown by the record that aforesaid Miranda would, from time to time, contract debts with said firm, without the knowledge of his wife, and that he kept a country store which did a small retail business, for which he paid taxes, and in the course of the conjugal partnership he had purchased with ready money another valuable estate.

"Inasmuch as it has not been proved in this controversy that the estate belonging to Dionisia Freytes and sold by her on January 20, 1899, to José Arturo Freytes, was liable for the debts contracted by her husband, even if incurred for the benefit of the conjugal partnership, according to the opinion of the Supreme Court of Spain rendered, among other decisions, in its judgment of November 22, 1888, paragraph 3 of article 1291 and article 1297 of the Civil Code, which declare that contracts executed in fraud of creditors may be rescinded, are wholly inapplicable to the case at bar, and so, for the same reason, is Judicial Order of March 20, 1899, referring to simulated contracts.

"With respect to the second allegation, the firm of A. Puente & Co., of Manatí, being one of the two contracting parties in the account-current kept by them with José Miranda, the legislation applicable thereto is the one governing commercial matters, wherefore said firm is bound, according to the judgment of the Supreme Court

of Spain, of February 15, 1879, to prove the certainty of the account current, for the purposes of a demand thereof in court.

"As appears from the books of the firm of A. Puente & Co., the debtor José Miranda Pérez, owed said firm, in June 30, 1899, $5,358.01 with the stipulated interest thereon at the rate of one per cent. per month, in case of delay, reckoned from the aforesaid date to that of the full payment thereof, and the plea of prescription set up by the defendants, as to amounts falling due before June 30, 1899, cannot be considered, because the accounts-current between A. Puente & Co. and José Miranda Pérez were continuous, which circumstance exempts them from prescription.

"As regards the last point alleged, article 313 of the Code of Commerce which provides that the claimant cannot validly demand payment of his credits until thirty days have elapsed, to be counted from the date of the notarial demand, is not applicable to the present case, because the accounts of A. Puente & Co. with José Miranda Pérez had a fixed due time, and said article of the Code of Commerce refers only to loans for an indefinite period.

"The plaintiff having assigned all his rights and actions in this suit to Juana Puente y Leal, the latter has been subrogated, as to all the effects thereof, in place of the plaintiff.

"The exception as to the capacity of the defendants, adduced by the latter, having been overruled, this case must be declared without special imposition of costs, according to the provision of section 63 of General Order No. 118, series of 1899.

"In view of Law 17, Title XI, of *Partida* IV; Law 5, Title IV, Book X of the *Novísima Recopilación;* articles 1291 and 1297 of the Civil Code; articles 50 and 313 of the Code of Commerce; article 371 of the Law of Civil Procedure, and General Order of March 20 and August 15, 1899, we adjudge that we should condemn and do condemn José Miranda Pérez to pay Juana Puente y Leal, as assignee of the plaintiff herein, the sum of $5358.01 United States currency, besides interest thereon, at one per cent. (per month?), from June 30, 1899, until full payment thereof; and we absolve from the complaint Dionisia Freytes Pagán and José Arturo Freytes Pagán, whose deed of purchase and sale executed in Vega-Beja on January 20, 1899, before the public notary thereof, we declare to be valid and effective, without special imposition of costs. So by this our judgment we pronounce, order and sign."

From the foregoing judgment an appeal in cassation for error of law was taken by the representative of Juana Puente y Leal, which was allowed, and the record having been forwarded to this Supreme Court, after citation of the parties, the appeal in cassation was conducted as an ordinary appeal, pursuant to the act of the Legislative Assembly, establishing this Supreme Court as a court of appeals, approved March 12, 1903. A day was set for the hearing, which took place with the attendance of counsel for the appellant who prayed that the judgment be reversed, in so far as therein is declared valid and effective the deed whose rescission or annulment is requested in the complaint.

*Mr. Texidor,* for appellant.

*Mr. Alvarez Nava,* for respondent.

MR. JUSTICE HERNÁNDEZ, after making the above statement of the case, delivered the opinion of the court:

The findings of fact of the judgment appealed from, are accepted.

The plaintiff invoked in his complaint, as legal grounds, articles 1089, 1091, 1108, 1291, 1297 and 1299, of the Civil Code; articles 62, 63 and 50 of the Code of Commerce; 36 37 and 41 of the Mortgage Law; the judgment of the Supreme Court of Spain, of December 2, 1887; articles 1, 2 and 3 of Judicial Order of March 20, 1899, and section 63 of General Order No. 118, series of 1899; and in a writing filed subsequently to said complaint, by way of addition to the prayer contained therein, he also requested that the spouses Miranda and Freytes be condemned to make good the liabilities mentioned in aforesaid prayer, a particular which by an involuntary omission had been excluded from the copy.

The defendants in their answer to the complaint cited in support of their right, articles 531 and 532 of the Law of Civil Procedure; 348, 657, 661, 1401 and 1408, of the Civil Code, and 313, 342, 943 and 1967 of the Code of Commerce.

From the certificate issued by the Registrar of Property of Arecibo, it appears that in the year 1889, José Miranda instituted inquiry proceedings in the municipal court of Manatí, for the purpose of establishing possession for six years, by his wife, Dionisia Freytes, of the one hundred and twenty-five *cuerdas* estate referred to herein, which ten years before, more or less, she had acquired by inheritance from her father, Pedro José Freytes, said estate having been valued in six hundred *pesos*. The declaration of ownership sought was granted by an order of July 1, the same year, and recorded in said registry of property on the 26th of October following, the estate in question being subsequently sold by Dionisia to Arturo Freytes in consideration of $5,000.00 received, according to public instrument executed in Vega Baja, dated January 20, 1899, likewise recorded in aforesaid registry.

From the account current carried on by José Miranda with A. Puente & Co., giving rise to the credit demanded, it appears that the items on the debit of said account for the most part refer to provisions, dry goods and effects, and some also to cash, with which Dionisia Freytes had nothing to do, and José Miranda, in answering to interrogatories at the oral trial, declared that he kept a small country-store on his wife's estate; that the purchases made and money taken by him at A. Puente & Co's. were intended for said estate and another one he had purchased but could not state when; that he engaged to pay the amount of the account demanded of him with the products of both the aforesaid estates; that although at the inquiry to establish ownership of his wife's estate, he had declared that it was worth six hundred *pesos* this was done for the purpose of getting the court and the clerk to charge him little for the investigation proceedings, but he understood that the property was worth twice or perhaps thrice that sum; that after the acquisition of the estate by his wife several plantings of coffee and other produce were made in it by the *agregados* (squatters) who worked on

shares with *Doña* Dionisia, and that the latter had no knowledge of his accounts with the firm of Puente, which were exclusively his and paid by him with the crops of another estate he had. The witness José Rivera Rodriguez testified that he knew the estate owned by Dionisia Freytes, but could not say how much it was worth; that formerly it was dedicated to pastures which were overgrown with brambles, and had some coffee plantations, but has none now; that when Dionisia sold said estate to José Arturo Freytes there were coffee plantations and some buildings on it; that the payments to the firm of A. Puente & Co., were made from coffee crops of the one hundred and twenty-five *cuerdas* estate, and that in January, 1899, Miranda owned another estate which he had bought of one Agosto, between 1897 and 1898.

The conclusions of law of the judgment appealed from, are accepted, but amending the 8th so as to read that the sum owed by José Miranda Pérez to the firm of A. Puente & Co., according to the latter's books, amounted to 5,358.01 *pesos,* provincial currency, and not dollars, as stated in said conclusion.

Although in the proceedings instituted in 1899 for the purpose of establishing Dionisia Freytes' possession of the one hundred and twenty-five *cuerdas* estate, referred to in the complaint, the same was declared to be worth six hundred *pesos,* and afterwards (in January, 1899) sold by Dionisia to her brother Arturo, for five thousand *pesos,* this increase in the value of the estate over the one previously given, cannot be considered as belonging to the conjugal partnership of the spouses Miranda and Freytes and therefore liable for the debt sought to be recovered, inasmuch as the value of said estate at the time it was inherited by Dionisia from her father Pedro José Freytes, six years before the proceedings to establish ownership, was not shown at the trial, nor that the greater value of five thousand *pesos* at which she had sold it to her brother Arturo was due to improvements made thereon

with capital furnished by the firm of A. Puente & Co. the conjugal partnership of the spouses Miranda and Freytes, the testimony given by José Miranda Pérez, being insufficient as proof in so important a matter, as said testimony was contradicted rather than corroborated by the items of the account-current with A. Puente & Co., most of which refer to provisions and dry goods, while the obligation contracted by him to pay the debt with the products of the estate, cannot affect Dionisia's dominion title thereto.

Whether the provisions of the Civil Code of 1889, or those of the prior legislation are considered, Dionisia Freytes cannot be held responsible, either with the whole or part of the value of the estate sold by her to her brother, for the debt contracted by her husband, José Miranda, with the firm of A. Puente & Co., and, therefore, the provisions of Judicial Order of March 20, 1899, of the Civil Code and of the Mortgage Law, invoked in the complaint, are not applicable to her nor to her brother.

Having in view the legal texts cited in the judgment, we adjudge that we should affirm and do affirm the judgment rendered by the District Court of Arecibo, December 22, 1902, modifying the same only as to the sum to be paid by José Miranda Pérez to Juana Puente y Leal which is 5358.01 *pesos,* provincial money, said sum to be reduced to United States currency at 40% discount, and we impose the costs of the appeal upon the appellant. The record is ordered to be returned to the trial court, together with the proper certificate.

Chief Justice Quiñones and Justices Figueras and Mac-Leary concurred.

Mr. Justice Sulzbacher did not sit at the hearing of this case.